IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA** : Crim. No. 1:17-CR-210
:
:
**v.** :
:
:
**DARRIAN WALKER** : Judge Sylvia H. Rambo

## M E M O R A N D U M

Before the court is Defendant's motion to suppress seeking exclusion of physical evidence and statements made by Defendant as the result of a warrantless search of his vehicle. (Doc. 20.) For the reasons stated herein, the motion will be denied.

**I.** **Background**

  **A.** **Procedural Background**

On July 12, 2017, a federal grand jury returned a three-count indictment charging Defendant Darrian Walker with possession with the intent to distribute cocaine hydrochloride in violation of 21 U.S.C. § 841 (Count 1), possession of a firearm by a felon in violation of 18 U.S.C. § 922(g) (Count 2), and possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c) (Count 3). (Doc. 1.) Defendant entered a plea of not guilty to the charges on July 18, 2017. (Doc. 12.)

On September 7, 2017, Defendant filed a motion to suppress physical evidence and Defendant's statements (Doc. 20), followed by a supporting brief the

next day (Doc. 21), wherein he moved to suppress all evidence seized and statements made on the basis that the arresting officers lacked probable cause to conduct the warrantless search and arrest. The Government filed a brief in opposition arguing that the 911 eyewitness call established sufficient reasonable suspicion to approach the vehicle, and once the officers saw packets of heroin in Defendant's pocket, they had probable cause to arrest and search him. (Doc. 26.) The court held an evidentiary hearing on the motion on January 2, 2018.

### B. Facts[1]

At the suppression hearing, the Government presented three witnesses, Dauphin County Department of Public Safety 911 dispatcher, Joanne Straub, and Harrisburg Police Department Officers Ernest Jenkins and Esteban Restrepo, as well as several exhibits. Defendant did not present any witnesses or exhibits at the hearing.

At 11:28:41 a.m. on May 7, 2017, Dauphin County Department of Public Safety received a 911 call from 717-218-4078. Ms. Straub took this call and obtained the following information from the caller:

- The caller's name was Jack Stevenson and he was calling from 717-218-4078;

---

[1] Unless otherwise noted, the following factual account represents the facts the court credits upon consideration of the testimony and exhibits presented during the evidentiary hearing on January 2, 2018.

- There were two men in an all-white Buick with "guns hanging out of their pockets" in the parking lot of the Family Dollar on Derry Street in Harrisburg parked in the handicapped spot;
- The caller was behind a truck watching the two men and it looked like they were doing something in the car;
- There was a "patty wagon" in the parking lot of the Big Ugly Warehouse;
- One of the men was black, dark skinned, chubby, and wearing a black hoodie, and the other was a tall, light skinned black male, wearing a grey hoodie with "plats hanging out of his head;"
- The caller had just walked past one of the men, bumped into him, and saw the gun.

(Gov't Ex. 1.) It should be noted that the Harrisburg Police Department ("HPD") was not able to reach Jack Stevenson after he made the reported 911 call.

The information provided by Mr. Stevenson was then forwarded to HPD through their computer system and dispatcher. Officers were subsequently dispatched to the Family Dollar for "a report of two males in a white Buick with guns hanging out of their pockets," "one black male, dark skin, chubby, black hoodie," "the other, light skinned black male in a grey hoodie, parked in the handicapped spot." (Gov't Ex. 4.)

HPD Officer Ernest Jenkins was dispatched, arrived on scene, and observed a white Buick backed into the handicapped parking spot in the Family Dollar parking lot. Once other HPD vehicles were in the area, Officer Jenkins and HPD Officer Esteban Restrepo pulled their vehicles in front of the Buick and observed a black male sitting in the passenger side backseat of the vehicle along with five children. Officer Jenkins and Officer Restrepo approached the Buick with their weapons at the low ready while Officer Jenkins yelled, "Police, put your hands up. Let me see your hands now." The man in the backseat, later identified as the Defendant, complied causing the officers to holster their weapons since Defendant had no weapons in his hands. When Officer Jenkins opened the vehicle door, he smelled the odor of marijuana, removed Defendant from the vehicle, and placed him in handcuffs. Once handcuffed, Officer Jenkins noticed what he recognized to be packets of heroin in the left pocket of Defendant's hoodie. When questioned about the packets, Defendant stated that he did not know what was in his pocket. Officer Jenkins then placed Defendant under arrest and Officer Restrepo *Mirandized* Defendant.

Following Defendant's arrest, Makeda Robinson, who was later determined to be the owner and driver of the vehicle, exited the Family Dollar and approached the Buick. Other HPD officers explained what was happening to Ms. Robinson while Officer Jenkins began his search of the Buick. During his search, Officer

Jenkins noticed the barrel of a silver handgun protruding from under the driver's seat. Officer Restrepo asked Defendant if he was the owner of the handgun to which Defendant responded, "No, mine is in my pocket." Officer Restrepo then asked Defendant if he had anything else that he was not supposed to and Defendant replied, "yeah, in all my pockets." Officer Restrepo then searched Defendant and found a tan handgun in the right pocket of Defendant's hoodie, a clear plastic bag containing individual bags of what was determined to be cocaine hydrochloride, and another bag of cocaine hydrochloride in Defendant's right pants pocket.

## II.  Discussion

In his motion to suppress, Defendant argues that the physical evidence recovered from his person and the statements he made incident to his arrest were obtained in violation of his Fourth Amendment rights and must be suppressed. "On a motion to suppress, the government bears the burden of showing that each individual act constituting a search or seizure under the Fourth Amendment was reasonable." *United States v. Ritter*, 416 F.3d 256, 261 (3d Cir. 2005). The applicable burden of proof is by a preponderance of the evidence." *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

The Fourth Amendment to the United States Constitution grants individuals the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. As the United States

Supreme Court has repeatedly held, "[t]he touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). "Generally for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause." *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002) (citing *Katz v. United States*, 389 U.S. 347, 356-57 (1967)).

There are two relevant search-related exceptions applicable in this case: the search-incident-to-arrest exception and the automobile exception. The search-incident-to-arrest exception is based on the need to preserve evidence and maintain the safety of law enforcement, *see Chimel v. California*, 395 U.S. 752, 762-63 (1969), and because a "custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." *Riley v. California*, 134 S. Ct. 2473, 2483 (2014). In the context of a search incident to arrest where the arrestee is in a vehicle, police officers may search the vehicle "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Arizona v. Gant*, 556 U.S. 332, 343 (2009) (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in judgment)). Under the automobile exception, "[i]f probable cause justifies the search . . . , it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Donahue*, 764 F.3d 293,

6

300 (3d Cir. 2014) (quoting *United States v. Ross*, 456 U.S. 798, 825 (1982)) (alterations in original).

The relevant seizure exception to the warrant requirement here is a *Terry* stop in which an officer may conduct a limited pat down, or frisk of a person's outer clothing, to search for weapons. *Terry v. Ohio*, 392 U.S. 1, 28 (1968). This brief investigatory stop is permissible when the officer has "a reasonable articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). For a *Terry* stop to rise to the level of an arrest, the officers must have probable cause to make the arrest. *United States v. Brown*, 765 F.3d 278, 288 (3d Cir. 2014) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Evidence that is obtained pursuant to a *Terry* stop that does not meet this exception must be suppressed as "fruit of the poisonous tree." *United States v. Brown*, 448 F.3d 239, 244 (3d Cir. 2006) (citations omitted).

Determining the timing of the seizure is usually the first step in the Fourth Amendment suppression analysis, although Defendant does not raise this issue. For the purposes of this motion, the court will consider Defendant seized when Officers Jenkins and Restrepo blocked the Buick with their vehicles.

Next, the court must determine if the "seizure was justified by reasonable, articulable facts known to [the officer] as of that time." *United States v. Torres*, 534 F.3d 207, 210 (3d Cir. 2008) (quoting *Johnson v. Campbell*, 332 F.3d 199, 205

7

(3d Cir. 2003)). A 911 call can sufficiently establish reasonable suspicion, but the court must consider the informant's "veracity," "reliability," and "basis of knowledge," which are "highly relevant in determining the value of his report." *Alabama v. White*, 496 U.S. 325, 328 (1990) (quoting *Illinois v. Gates*, 462 U.S. 213, 230 (1983)). The Third Circuit has identified specific aspects of tips, such as the 911 call in this matter, which can indicate reliability:

> (1) The tip information was relayed from the informant to the officer in a face-to-face interaction such that the officer had an opportunity to appraise the witness's credibility through observation.
> (2) The person providing the tip can be held responsible if her allegations turn out to be fabricated.
> (3) The content of the tip is not information that would be available to any observer.
> (4) The person providing the information has recently witnessed the alleged criminal activity.
> (5) The tip predicts what will follow, as this provides police the means to test the informant's knowledge or credibility.

*Torres*, 534 F.3d at 211 (citing *Brown*, 448 F.3d at 249-50). Other factors can be considered as well, such as a high crime area and a suspect's nervousness or evasive behavior. While these factors are relevant to the court's analysis, "no single factor is dispositive or even necessary to render an informant's tip reliable." *United States v. Johnson*, 592 F.3d 442 (3d Cir. 2010) (citing *Torres*, 534 F.3d at 213.) Ultimately, the court must determine "whether the unknown caller's tip 'possessed sufficient indicia of reliability, when considering the *totality of the*

*circumstances*, for us to conclude that the officers possessed an objectively reasonable suspicion sufficient to justify a *Terry* stop.'" *Torres*, 534 F.3d at 211 (quoting *Brown*, 448 F.3d at 250) (emphasis in original).

A. **The 911 call**

The primary issue before the court is whether the 911 call provided reasonable suspicion to justify HPD officers approaching the vehicle occupied by Defendant. Defendant argues that the police lacked reasonable suspicion to approach Defendant as the caller failed to give sufficient reliable information and could not be contacted after the incident. (*See* Doc. 21.) He purports that this matter is similar to *Florida v. J.L.*, 529 U.S. 266 (2000), in which the Supreme Court held that an anonymous call about a man at a bus stop carrying a gun did not provide reasonable suspicion to support a *Terry* stop because the anonymous caller did not observe a crime and provided "no predictive information and therefore left the police without means to test the informant's knowledge or credibility." On the other hand, the Government argues that the 911 call was sufficient because Mr. Stevenson provided his name, phone number, play-by-play details of his observations, descriptions of the men and surrounding area, and other information that could be corroborated. (*See* Doc. 26.)

Evaluating the totality of the circumstances, the court finds that Mr. Stevenson provided sufficient information giving Officers Jenkins and Restrepo

reasonable suspicion to approach the Buick occupied by Defendant and conduct a *Terry* stop. Regardless of whether Mr. Stevenson could be contacted after the fact, he provided his name and phone number to the 911 dispatcher at the time of the call. Mr. Stevenson then described the scene as he viewed it, detailing that he bumped into one of the men and saw the gun, as well as a specific description and location of the car, i.e. an all-white Buick parked in the handicapped spot of the Family Dollar on Derry Street. *See United States v. Valentine*, 232 F.3d 350, 354 ("reporting what he had observed moments ago" enhanced reliability of informant's tip); *White*, 496 U.S. at 332 (finding that the level of detail provided can enhance an informant's credibility). He additionally described a "patty wagon" in the parking lot of a nearby store, which could have been verified by police. Mr. Stevenson also provided a physical description of both men, including their hoodie colors as well as hairstyle ("plats hanging out of his head"). Although this information was not given directly to HPD officers, the dispatcher's knowledge is imputed to the officers in the field when determining the reasonableness of the *Terry* stop. *Torres*, 534 F.3d at 210.

Unlike the anonymous caller in *J.L.*, Mr. Stevenson provided predictive information and gave the police means to test his knowledge and credibility. Officers Jenkins and Restrepo corroborated Mr. Stevenson's information when they arrived on scene. *See Johnson*, 592 F.3d at 450 ("The reliability of an

informant's tip can be enhanced further by independent police corroboration of the information provided.") They observed a white Buick parked in the handicapped spot in the Family Dollar parking lot. Upon approaching the vehicle, Officers Jenkins and Restrepo found a man matching the description given by Mr. Stevenson sitting in the backseat. For these reasons, the court is satisfied that the officers had reasonable suspicion when they approached the Buick.

### B. Defendant's arrest

Next, the court must determine whether Defendant's arrest was lawful. The majority of courts have held that "police actions in blocking a suspect's vehicle and approaching with weapons ready, and even drawn, does not constitute an arrest per se." *United States v. Edwards*, 53 F.3d 616, 619 (3d Cir. 1995). Police can also place a suspect in handcuffs while securing a location or conducting an investigation without converting a *Terry* stop into an arrest. *Johnson*, 592 F.3d at 448 (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1193 (3d Cir. 1995)). Taking such steps is appropriate when "reasonably necessary to protect [officers'] personal safety and to maintain the status quo during the course of the stop." *United States v. Hensley*, 469 U.S. 221, 235 (1985).

As previously established, Officer Jenkins had reasonable suspicion to approach Defendant and conduct a *Terry* stop. In doing so, Officers Jenkins and Restrepo approached the Buick occupied by Defendant with their weapons at the

11

low-ready position and Officer Jenkins handcuffed Defendant once he was removed from the vehicle. Given the officers reasonable suspicion that the vehicle occupant, later identified as Defendant, was armed, it was not unreasonable for Officers Jenkins and Restrepo to draw their weapons and order Defendant out of the vehicle and handcuffed until the scene was secured. *See Johnson*, 592 F.3d at 453. Upon removing Defendant from the vehicle, Officer Jenkins smelled marijuana and noticed what he recognized as a packet of heroin in the left pocket of Defendant's hoodie, which clearly supplied ample probable cause for Defendant's arrest. *See United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006). Although the officers searched the vehicle prior to searching Defendant's person, presumably to ensure the safety of the five children, the eventual search of Defendant's person was a lawful search incident to arrest, and therefore, there is no basis upon which to suppress the handgun and cocaine hydrochloride. Furthermore, because Defendant was properly *Mirandized* prior to making statements regarding a gun and other contraband in his pockets, those statements will not be suppressed.

Lastly, to the extent Defendant raised this issue in his motion, because Officer Jenkins had sufficient probable cause to search and arrest Defendant, he was authorized under both the search-incident-to-arrest and automobile exceptions as stated in *Gant* and *Ross*, respectively, to conduct a thorough search of the

vehicle. Therefore, the court will not suppress the handgun that was recovered during the vehicle search. S*ee Donahue*, 764 F.3d at 300.

## III. <u>Conclusion</u>

As stated herein, Officers Jenkins and Restrepo had the requisite reasonable suspicion and probable cause to approach, and eventually arrest and search Defendant and the vehicle, to satisfy the requirements of the Fourth Amendment at each stage of Defendant's encounter with officers on May 7, 2017. Accordingly, all the evidence discovered during the search of Defendant and the vehicle, as well as Defendant's statements made incident to arrest, were lawfully obtained and will be admissible at trial.

An appropriate order will issue.

                                        s/Sylvia H. Rambo
                                        SYLVIA H. RAMBO
                                        United States District Judge

Dated: March 20, 2018